IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:24-cv-01860-SKC-MDB

HUBERT YOUSIF,

    Plaintiff,

V.

PENKHUS MOTOR CO., and
SEVAN STRYKER,

    Defendants.

## ORDER RE: PARTIAL MOTION TO DISMISS (DKT. 22)

From December 2019 until Spring 2023, Plaintiff Hubert Yousif worked in sales and as the Finance Director for Defendant Penkhus Motor Co. (Penkhus), a car dealership in Colorado Springs, Colorado. Dkt. 19.[1] Plaintiff was consistently a top performer and never received any written warnings or discipline. *Id*. at ¶¶13-14. Shortly after he began, Defendant Sevan Stryker, the dealership's general manager, and other employees began to engage in racist, ableist, and ageist behavior. Specifically, these employees would engage in direct name-calling or make derogatory comments about individuals from the Middle East, Muslims, and immigrants. *Id*. at

---

[1] The Court takes these allegations to be true for purposes of evaluating the Motion to Dismiss.

1

¶¶15-25. In addition, Stryker allegedly harassed and retaliated against Plaintiff because of his disabilities and his requests for leave related to those disabilities. *Id.* at ¶¶48-53, 57-61. Although Plaintiff complained about this treatment, Stryker never made any attempt to stop it. *Id.* at ¶41, 44-47.

In March 2023, Plaintiff submitted paperwork pursuant to the Family and Medical Leave Act requesting time off to recuperate from a forthcoming surgery. *Id.* at ¶64. Thereafter, on March 31, 2023, Plaintiff and another employee, Jordan McManus, got into an altercation, which McManus instigated. *Id.* at ¶¶68-77. Although Plaintiff explained that McManus was the aggressor, Stryker ignored Plaintiff and the corroborating video evidence and fired only Plaintiff. *Id.* at ¶¶82-88.

Plaintiff filed this action asserting claims against Penkhus for violations of Title VII, 42 U.S.C. § 1981, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the Family and Medical Leave Act, and the Colorado Anti-Discrimination Act. Plaintiff also asserts a claim against Stryker for aiding and abetting Penkhus in these violations, and a claim for tortious interference with an employment contract.

Defendants filed a Partial Motion to Dismiss (Dkt. 22) seeking dismissal of the claims against Stryker in their entirety. The matter is fully briefed, and no hearing is necessary. Having considered the Complaint, the Motion to Dismiss, the related filings, and the controlling law, the Court GRANTS Defendants' Motion in part and DENIES it in part.

## A. STANDARD OF REVIEW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124-25 (10th Cir. 2010) (internal citations omitted). But the Court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678 (cleaned up).

The *Twombly/Iqbal* pleading standard first requires the court to identify which allegations "are not entitled to the assumption of truth" because, for example, they state legal conclusions or merely recite the elements of a claim. *Id.* It next requires the court to assume the truth of the well-pleaded factual allegations "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. In this analysis, courts "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). The standard is a

liberal one, however, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

## B. ANALYSIS

Defendants seek dismissal of Plaintiff's claims that Stryker aided and abetted Penkhus in its discriminatory conduct. Defendants also argue Plaintiff has failed to state a claim for tortious interference with an employment contract and that his request for exemplary damages should be stricken as premature.

**1.     Aiding and Abetting**

For each of Plaintiff's claims of discrimination against Penkhus, he asserts a parallel claim against Stryker under the Colorado Anti-Discrimination Act (CADA) for "aiding and abetting" Penkhus in that discrimination. Dkt. 19 (Claims Two, Four, Six, Eight). Specifically, CADA provides:

>  (1) It is a discriminatory or an unfair employment practice:
>
> (e) For any person, whether or not an employer, an employment agency, a labor organization, or the employees or members thereof:
>
> (I) To aid, abet, incite, compel, or coerce the doing of any act defined in this section to be a discriminatory or unfair employment practice . . .

Colo. Rev. Stat. § 24-34-402(1)(e).

Defendants seek dismissal of Plaintiff's claims against Stryker because "Penkhus and Mr. Stryker were, legally speaking, a single actor, and aiding and

4

abetting requires two or more separate actors." Dkt. 22, pp.1-2. In support of their position Defendants cite *Judson v. Walgreens Co.*, No. 20-cv-00159-CMA-STV, 2021 WL 1207445 (D. Colo. Mar. 31, 2021).

In *Judson*, District Judge Christine M. Arguello addressed this exact question and concluded that § 402(1)(e) does not allow a plaintiff to sue employees for aiding and abetting under CADA when the employee's conduct underlies the plaintiff's claims against the employer. *Id.* at *4. In reaching this decision, Judge Arguello relied on the "intracorporate conspiracy doctrine, which provides that 'a corporation cannot conspire with its own agents or employees' because the corporation and its employees 'are members of the same collective entity' and, therefore, 'there are not two separate people to form a conspiracy.'" *Id.* (quoting *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Ed.*, 926 F.2d 505, 509–10 (6th Cir. 1991)). Judge Arguello concluded that supervisory employees acting within the scope of their employment were not distinct legal entities subject to direct liability under the statute. *Id.*

Plaintiff, however, relies on *Morales v. L. Firm of Michael W. McDivitt, P.C.*, 641 F. Supp. 3d 1035, 1041 (D. Colo. 2022), in wich District Judge William J. Martinez reached the opposite conclusion. He held that the plain language of the statute "permits suits against supervisory employees for actions they took within the scope of their employment." *Id.* at 1042.[2] In *Morales*, Judge Martinez was guided by the

---

[2] Judge Martinez was also guided by Magistrate Judge Scott T. Varholak's thoughtful and thorough recommendation in *Judson*. There, Judge Varholak conducted an extensive survey of the case law on this issue to conclude the statute unambiguously

express reference in the statute to both employers and employees and the holdings in *Walters v. President & Fellows of Harvard College*, 616 F. Supp. 471 (D. Mass. 1985) and *Schram v. Albertson's*, Inc., 934 P.2d 483 (1997). In *Walters* and *Schram*, the courts analyzed similar statutory provisions and concluded that the respective legislatures specifically chose to distinguish between employers and employees, indicating they were not considered to be a single entity. *Walters*, 616 F. Supp. at 474; *Shram*, 943 P.2d at 488.

Although the parties encourge the Court to follow either *Judson* or *Morales*, it concludes the answer lies in the space between these two opinions. Like Judge Martinez in *Morales*, the Court "first look[s] to the plain language of the statute." *Maehal Enterprises, Inc. v. Thunder Mountain Custom Cycles, Inc.*, 313 P.3d 584, 590 (Colo. App. 2011) (cleaned up). In doing so, the Court agrees that the plain lanugage of the "aiding and abetting" provision draws a clear distinction between employers and employees such that, for purposes of this provision, "the statute cannot be reasonably interpreted to consider employer and employee as a single entity." *Morales*, 641 F. Supp. at 1042. Therefore, the Court concludes the Colorado legislature unambiguously intended to diverge from Title VII—where an employee supervisor cannot be held individually liable—and permits a cause of action directly

---

permitted lawsuits against supervisory employees. *Judson v. Walgreens Co.*, No. 20-cv-00159-CMA-STV, 2020 WL 9078332, at *3-6 (D. Colo. Sept. 10, 2020), *report and recommendation adopted in part, rejected in part*, No. 20-cv-00159-CMA-STV, 2021 WL 1207445 (D. Colo. Mar. 31, 2021).

6

against employees. However, the Court also concludes the contemplated cause of action is not as broad as Plaintiff suggests.

While the statute does not define "aiding and abetting," these terms "are familiar to the common law, which has long held aiders-and-abettors secondarily liable *for the wrongful acts of others*." *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 484 (2023) (emphasis added); *see also Black's Law Dictionary* (8th ed. 2004) ("aid and abet": "To assist or facilitate the commission of a [violation] or to promote its accomplishment."). Given this plain meaning, the Court concludes that an employee may not be held liable for aiding and abetting an employer when it is the employee's own discriminatory conduct that gives rise to the employer's liability. If the Colorado legislature intended for employees to be held directly liable for their own conduct, it could have drafted the statute accordingly. *Mason v. People*, 932 P.2d 1377, 1380 (Colo. 1997) (courts presume that if the General Assembly intended a statute to achieve a particular result, it would have employed terminology clearly expressing that intent); *see also Mills v. Hankla*, 297 P.3d 158, 172 (Alaska 2013), *abrogated on other grounds by Lane v. City of Juneau*, 421 P.3d 83 (Alaska 2018) (analyzing a similar Alaska statute and declining to "hold that the legislature intended to accomplish a result so significant by a method so abstruse"). Instead, the statute

clearly contemplates employee liability only where the employee assists or facilitates *another's* discriminatory conduct.[3]

As it applies to this case, Stryker cannot be held liable for aiding and abetting Penkhus where it is also Stryker's conduct that gives rise to Penkhus' liability. To the extent Plaintiff's aiding and abetting claims are founded on allegations that Stryker made racist (claim two), ageist (claim four), ableist (claim six), or other derogatory remarks, they are not contemplated under the statute because these actions do not assist anyone else in discriminatory conduct. The same is true for the claims that Stryker terminated Plaintiff because of his race, age, or disability. In addition, Plaintiff's eighth claim—asserting that Stryker aided and abetted Penkhus in retaliating against Plaintiff for engaging in protected conduct—is based entirely on Stryker's conduct alleged to give rise to the Penkhus' liability for unlawful retaliation. Therefore, it is dismissed in its entirety.

But claims two, four, and six also contain allegations that do support plausible claims of aiding and abetting under the statute. For example, according to the Amended Complaint, other Penkhus employees engaged in discriminatory conduct based on Plaintiff's race, age, and disability that resulted in a hostile work

---

[3] Furthermore, although the Parties discuss this claim under the rubric of "aiding and abetting," the Court notes the language of Section 24-34-402(1)(e)(I) encompasses a broader swath of potential misconduct, including aiding, abetting, inciting, compelling, or coercing. Like aiding and abetting, "inciting, compelling, and coercing" are terms that require another party or entity, as one cannot incite, compel, or coerce their own actions. Thus, the Court's conclusion is consistent with the language of the entire provision.

8

environment. Plaintiff repeatedly complained to Styker about this conduct, but he did nothing to put an end to it and thus facilitated it. Plaintiff's aiding and abetting claims survive on these limited bases.

**2.     Tortious Interference with Employment Contract**

Defendants seek dismissal of Plaintiff's claim against Stryker for intentional interference with an employment contract on the basis that Stryker, as Penkhus' agent, is not a third-party who could interfere with Plaintiff's contract.[4] The Court disagrees.

"[A]n agent who, while acting within the scope of official duties, causes his or her principal to breach a contract generally will not be held liable for tortious interference with that contract." *Rudd v. Burlington Coat Factory Warehouse of Colo.*, 388 F. Supp. 2d 1201, 1206 (D. Colo. 2005). However, if an agent's actions are not in service to the corporation's interests but rather, are "motivated solely out of animus toward one or both contracting parties, then that agent can be held liable under this legal theory." *Smith v. Sprint/United Mgmt. Co.*, No. 15-cv-00550-WJM-KLM, 2017 WL 2334025, at *10 (D. Colo. Feb. 24, 2017), *report and recommendation adopted*, 2017 WL 1130034 (D. Colo. Mar. 27, 2017), *aff'd*, 718 F. App'x 630 (10th Cir. 2017).

---

[4] Defendants seem to acknowledge the general proposition under Colorado law that a plaintiff's "status as an at-will employee does not preclude [a tortious interference] claim because even a contract terminable at will is entitled to some protection from tortious interference." *Jandro v. Foster*, 53 F. Supp. 2d 1088, 1099 (D. Colo. 1999) (*citing Memorial Gardens, Inc. v. Olympian Sales & Management Consultants, Inc.*, 690 P.2d 207 (Colo.1984)). Thus, the Court need not discuss Plaintiff's status as an at-will employee.

9

*See also W.O. Brisben Companies, Inc. v. Krystkowiak*, 66 P.3d 133, 137 (Colo. App. 2002), *aff'd on other grounds*, 90 P.3d 859 (Colo. 2004) ("[A]n agent acts improperly only when he or she is motivated solely by the desire to harm one of the contracting parties or to interfere in the contractual relations between the parties.").

In his Amended Complaint, Plaintiff alleges Stryker intentionally interfered with Plaintiff's employment relationship "to rid Penkhus of an older, non-white, disabled employee who had made repeated complaints about age and disability-related ridicule at work." Dkt. 19, ¶153. "Whether an actor's conduct is improper is a factual inquiry largely dependent upon the actor's motives." *Jandro*, 53 F. Supp. 2d at 1099–100 (citing *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 500 (1995)). Construing Plaintiff's allegations in the light most favorable to him, as the Court must, the Court concludes he has plausibly alleged that Stryker's actions in interfering with Plaintiff's continued employment relationship with Penkhus were motivated solely by a desire to cause Plaintiff harm. Therefore, Defendant's request to dismiss this claim is denied.

3.   **Exemplary Damages**

Turning to Plaintiff's request for exemplary damages, Defendants are correct that these damages may not be requested in the first instance because Colorado does not allow it. The Colorado statute is clear that "[a] claim for exemplary damages in an action governed by this section may not be included in *any* initial claim for relief." Colo. Rev. Stat. § 13-21-102(1.5)(a) (emphasis added). Plaintiff's claims fall within the

purview of the statute because his claims seek damages from "a jury for a wrong done to the person . . . ." *Id.* § 13-21-102(1)(a). The Court need not review the parties' cited cases in support of their respective positions on the matter because the statute is unambiguous and requires no further analysis.

Plaintiff's request for exemplary damages is stricken. He may seek to amend his pleading to include a request for exemplary damages following the exchange of initial disclosures under Fed. R. Civ. P. 26 and upon establishing "prima facie proof of a triable issue." *Id.* 13-21-102(1.5)(a).

*   *   *

For the reasons shared above, the Court respectfully DENIES IN PART and GRANTS IN PART Defendants' Motion to Dismiss (Dkt. 22). Consistent with the foregoing analysis, Plaintiff's second, fourth, and sixth claims are dismissed in part, and his eighth claim is dismissed entirely. All dismissals are with prejudice. In addition, Plaintiff's request for exemplary damages is stricken.

IT IS FURTHER ORDERED that the stay is in this matter is lifted. Within 14 days of this Order, the Parties shall contact Magistrate Judge Martiza Dominguez Braswell's chambers to set this matter for a Rule 16(b) Scheduling Conference and such other matters as Judge Dominguez Braswell sees fit to address.

DATED: September 15, 2025.

BY THE COURT:

_____
S. Kato Crews
United States District Judge

12